*158 OPINION OF THE COURT
Harold Beeler, J.
The principal question presented in this predicate felony challenge is whether a court, before accepting a guilty plea from a defendant who states he was "kind of high” at the time of the crime must, as a matter of law, advise the defendant of the intoxication defense and secure from the defendant a knowing waiver of such defense.
Defendant herein, following his plea of guilty to criminal sale of a controlled substance in the fifth degree, moves to contest his status as a second felony offender, claiming that his 1984 conviction by plea to attempted robbery in the first degree was unconstitutionally obtained, and as such cannot properly be used as the basis for a predicate felony finding in the instant case (see, CPL 400.21 [7] [b]).
As grounds therefor, defendant maintains that his recitation of the facts during the plea allocution on the 1984 robbery raised a "significant doubt” as to defendant’s intent to forcibly steal property in that, during the allocution, defendant was initially unable to recall the facts of the incident and later stated that he was "kind of high” at the time he confronted the victim. Defendant argues that, because the court accepted his attempted robbery plea "without further inquiry to insure that * * * [defendant] was, in fact, guilty and that he was aware of the possible defense of intoxication and knowingly waived * * * [such defense],” the plea was not voluntarily and intelligently entered and was therefore unconstitutionally obtained within the meaning of New York’s second felony offender law (see, CPL 400.21 [7] [b]).
For the reasons that follow, as previously set forth in this court’s oral ruling of March 29, 1993, defendant’s motion to controvert his status as a predicate felon is, in all respects, denied.
Pursuant to subdivision (7) (b) of CPL 400.21, "[a] previous conviction * * * which was obtained in violation of the rights of the defendant under the applicable provisions of the constitution of the United States must not be counted in determining whether the defendant has been subjected to a predicate felony conviction.”
In assessing the constitutionality of a prior guilty plea for purposes of a predicate felony challenge, a mere showing that the defendant "did not expressly admit a particular element of the crime in the factual allocution is not * * * by itself *159 [sufficient] to raise a constitutional claim”. (People v Moore, 71 NY2d 1002, 1005; see also, People v Lopez, 71 NY2d 662, 666, n 2.) Moreover, where a defendant’s guilty plea is to a lesser crime than that charged in the indictment, there is no requirement that the court establish a factual basis for the defendant’s plea (People v Moore, supra, at 1006; see also, People v Clairborne, 29 NY2d 950, 951).
When, however, a court, during the course of a guilty plea, chooses to inquire of a defendant as to the facts and circumstances surrounding his commission of the offense, and when the "defendant’s recitation of the facts * * * clearly casts significant doubt upon the defendant’s guilt or otherwise calls into question the voluntariness of the plea * * * the trial court has a duty to inquire further to ensure that defendant’s guilty plea is knowing and voluntary”. (People v Lopez, supra, at 666.) Thus, where a defendant’s factual recitation either "negates an essential element of the crime pleaded to” (People v Lopez, supra) or "leaves unsatisfied such an essential element” (People v Lawrence, 192 AD2d 332, 334 [emphasis in original]), the court "may not accept the plea without making further inquiry to ensure that defendant understands the nature of the charge and that the plea is intelligently entered”. (People v Lopez, supra, at 666; People v Lawrence, supra.) The failure of a court to engage in such "further inquiry” when necessitated by a defendant’s recitation of the facts underlying the crime pleaded to could render the resulting conviction "unconstitutionally obtained” and, as such, unusable as a basis for an enhanced sentence under CPL 400.21 (see, People v Moore, supra, at 1005).
Even assuming, without deciding, that defendant’s statements to the court at the time of his 1984 plea to attempted robbery in the first degree were such as to raise a "significant doubt” as to defendant’s guilt, it is clear that, contrary to defendant’s claim, the court conducted a sufficient "further inquiry” to ensure that defendant was, in fact, guilty of that crime and that his plea was intelligently and voluntarily entered.
In this regard, the minutes of defendant’s December 10, 1984 plea reveal that the court, apparently referring directly to the allegations contained in the robbery indictment, asked defendant if it was true that, on the date in question (i.e., September 27, 1984), defendant "forcibly stole certain property from Richard Ryan * * * to wit, a sum of money and personal property, and in the course of the commission of the *160 crime and of the immediate flight therefrom * * * used and threatened the immediate use of a dangerous instrument, to wit, a length of wood. Now, is that true?” Defendant responded "It’s true”.
Thereupon, the court asked defendant to "[t]ell me what the facts are”, to which defendant responded "I forgot”. Defendant then consulted with his attorney, after which the following colloquy ensued:
"the defendant: I went to Central Park Flower Gardens, walked into the particular garden, picked up the stick and told him give me — I was going to stick him with the stick— "the court: You mean stab him?
"the defendant: Right.
"the court: Why did you tell him that?
"the defendant: I don’t know. I was kind of high at the time.
"the court: Did you try to steal money from him?
"the defendant: Yes. I got a gold chain and 95 cents.
"the court: And that was by threatening him with the stick if he didn’t give up the property, right?
"the defendant: Yes.”
As reflected in defendant’s admission that, in trying to steal money from the victim, he "got a gold chain and 95 cents”, and in his unqualified response to the court’s inquiry concerning his use of a stick to force the victim to give up the property, it is clear that defendant, despite his claim of intoxication, knew " 'exactly what he was doing’ when he perpetrated the crime[ ] to which he pleaded guilty”. (People v Paterno, 141 AD2d 771, 772.)
In this regard, the court has examined the entire transcript of defendant’s December 10, 1984 plea, as well as the minutes of defendant’s prior, unsuccessful plea allocution in that case, which was held before the same court less than three weeks earlier, and has found nothing to further support defendant’s bare assertion that he was "kind of high” at the time he committed the September 27, 1984 robbery. To the contrary, the minutes of both proceedings and, in particular, defendant’s ability to recall specific details of the incident, reveal a clarity of mind at the time of the crime that is wholly inconsistent with his claim of intoxication. Under these circumstances, and in view of defendant’s unequivocal admission at the December 10 plea proceeding to the truth of the *161 allegations contained in the 1984 indictment, this court finds that the "further inquiry” of defendant conducted by the court on December 10 was more than sufficient to erase any doubt as to defendant’s guilt (see, People v Paterno, supra; see also, People v Santana, 110 AD2d 789, lv dismissed 67 NY2d 656).
The court further finds, moreover, that there was no need for the trial court to advise defendant of the intoxication defense, or to obtain his waiver thereof, prior to accepting his plea. In so holding, this court is mindful of the established principle that a defendant’s voluntary intoxication at the time of an offense, while not strictly a "defense”, can rise to a level sufficient to negate an element of the crime charged (see, Penal Law § 15.25; People v Zeth, 148 AD2d 960, 961). Thus, a defendant’s admission during the course of a factual allocution that he was "drunk” or "high” at the time of the offense can put a plea court on notice that further inquiry into the facts surrounding the crime is needed to assure defendant’s guilt (see, People v Dugger, 161 AD2d 283; see also, People v Zeth, supra, at 961).
Contrary to the argument advanced by defense counsel, however, the mere statement by a defendant during a plea allocution that he was "drunk” or "high” at the time he committed the charged offense does not automatically trigger a corresponding duty by the court to apprise the defendant of the existence of the intoxication defense.
In cases where, as here, the court is satisfied, through further inquiry into the circumstances surrounding a defendant’s commission of the offense, that the defendant is in fact guilty of the crime charged and has no viable intoxication defense, there is simply no purpose to be served in either advising the defendant of the existence of the defense or in securing his waiver thereof. To hold otherwise would, in this court’s view, yield the absurd result of requiring a court to obtain a waiver from a defendant of a defense that, based on his own version of events, has no application to the facts of the case. Stated simply, " 'defendant’s alleged intoxication is not relevant in this case because his own testimony * * * establishes that he was fully aware of what was occurring and what he was doing’ ” at the time of the 1984 robbery (People v Santana, supra, at 789; see also, People v Orr, 144 AD2d 391; People v Suba, 130 AD2d 526).
In this regard, defendant’s 1984 robbery conviction is read *162 ily distinguished from those cases where the defendant’s level of intoxication at the time of the offense, as established by the court’s inquiry during the plea allocution, may have been such as to negate an essential element of the crime to which the defendant is pleading. In such cases, the court must, as noted, secure from the defendant prior to accepting his guilty plea, a knowing waiver of the intoxication defense.
In People v Simone (179 AD2d 694), for example, the appellate court reversed the defendant’s conviction by plea to attempted robbery in the first degree where the trial court failed to secure such a waiver following the defendant’s admission that he had " 'ingested enough [alcohol] so that it totally blotted [his] memory or a great deal of [his] memory as to what happened’ ”. (Supra, at 695.)
Similarly, in People v Braman (136 AD2d 382), the defendant, during his guilty plea to assault in the first degree, admitted that he " 'really [didn’t] know what happened’ ” the night of the incident (supra, at 383). After the prosecutor then tried to "refresh[ ] his recollection” by describing the People’s version of the crime, the defendant stated: " 'Really, I don’t know what happened because I was loaded that night and the next morning I woke up, and I didn’t know what I was in jail for or nothing, and they told me I signed a statement on myself and I don’t remember signing nothing’ ”. (Supra.) The appellate court in Braman reversed the defendant’s conviction and vacated his guilty plea, finding that the trial court, before accepting the defendant’s plea, had failed to obtain his knowing waiver of the intoxication defense (supra).
Finally, in People v Jimenez (73 AD2d 533), the defendant, when asked during the allocution on his plea to attempted murder in the second degree to give his involvement in the incident, stated: "To tell you the truth, I really can’t recollect what happened because I was drinking. I had been drinking for nine hours; from 9 in the morning until it happened. I just remember * * * a few things, but I can’t remember everything”. (Supra, at 533-534.) When further prodded by the Court to provide "the particular part that [he] played in th[e] incident”, the defendant replied: "I don’t know. I was there. I was trying to break up the fight. I was shot. I can’t recall”. (Supra, at 534.)
Holding that the defendant’s "claim that he had been drinking for many hours before the occurrence raised a serious question whether he was intoxicated when he stabbed [the *163 victim] and, if so, whether his intoxication was of such degree as to negate an intent to kill the victim”, the appellate court in Jimenez (supra) found no indication in the plea record that the defendant "was aware [that] intoxication was a potential 'defense’ to the crime to which he pleaded guilty”. (Supra.) On that ground, the Court reversed the defendant’s conviction and vacated his plea and sentence (supra).
In direct contrast to the above-cited cases, the plea record of this defendant’s 1984 robbery conviction, as noted, clearly establishes defendant’s guilt of that offense, and leaves no doubt that defendant fully understood the nature of the charge to which he was pleading and had no viable intoxication defense to that charge. These findings are consistent, moreover, with the report submitted by the Department of Probation at the time of defendant’s sentence on the 1984 case, which indicates not only that defendant signed a written confession following his arrest, but also gave a full, factual summary of the robbery to the interviewing probation officer. According to the probation report, defendant told the probation officer that at the time of the offense "he was smoking a joint while he was walking through the park * * * that he picked up a tree branch and asked the * * * [victim] for money. The man only gave him $.95 cents change, the defendant saw the gold chain around * * * [the victim’s] neck and grabbed it. The defendant admitted it was stupid and blames himself’.
In finding that defendant has failed to satisfy his burden of establishing the unconstitutionality of his 1984 robbery conviction (see, People v Harris, 61 NY2d 9, 15), the court notes that defendant was represented in that case by competent counsel, and was fully apprised by the court of the constitutional and other rights he was waiving in pleading guilty. Further, the record reflects that defendant was sentenced on his plea, pursuant to a highly favorable plea bargain, to the minimum permissible term of IVi to &V2 years on a plea to a lesser crime than that charged in the original indictment. Significantly, there is no indication that defendant has ever moved to withdraw his guilty plea in the 1984 case; nor does it appear that defendant has ever prosecuted an appeal of the resulting conviction and judgment.
For all the aforesaid reasons, this court finds that defendant’s 1984 plea to attempted robbery in the first degree was *164 knowingly, voluntarily and intelligently entered and was properly accepted by the trial court. Accordingly, defendant’s motion to controvert his status as a predicate felon based on that conviction is denied, and defendant is adjudicated a second felony offender.